IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Doreen Ricco, | ) | CASE NO. 1:02 CV 496 |
| Plaintiff, | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| John E. Potter, *et al.*, | ) | <u>MEMORANDUM OPINION</u> |
| Defendants. | ) | |

This matter is before the Court subsequent to a one-day bench trial. The Plaintiffs called five witnesses: Christine Campbell, Patricia Ann Wheeler, April Scott, Charles Baker, and Doreen Ricco. The Defendants called Dora Foster. Both sides submitted exhibits. Following trial, the parties were given the opportunity to file post trial briefs, and to submit proposed findings of fact and conclusions of law. The issues have now been fully briefed and presented.

Doreen Ricco filed her original Complaint against John Potter and the United States Postal Service on March 14, 2002, alleging that she was terminated in violation of the Family Medical Leave Act ("FMLA"), and seeking back pay, liquidated damages, and reinstatement. (ECF #1). An Amended Complaint was filed in October of that same year. (ECF #18). The

Defendants filed a Motion to Dismiss for failure to state a claim upon which relief could be granted, which was granted by the Court in February of 2003.  (ECF #19, 23, 24).  Ms. Ricco appealed the dismissal to the Sixth Circuit Court of Appeals.  (ECF #25).  The Court of Appeals Reversed the Dismissal and remanded the case for further proceedings.  (ECF #29).  Following a period of discovery, the parties filed cross motions for summary judgment (ECF #42, 43).  The Court denied both motions and set the case for trial.  (ECF #50).

## ANALYSIS

There are three main questions raised in this action.  The first is whether Ms. Ricco was improperly denied FMLA leave.  The second is whether the statute of limitations has run on Ms. Ricco's claims.  Finally, if Ms. Ricco's claims are timely, and the statute of limitations had not run before she filed suit, the Court must determine what remedies are appropriate.

A.  Eligibility for Leave Under the Family Medical Leave Act

The Family Medical Leave Act ("FMLA") entitles employees to twelve weeks of unpaid leave during any twelve month period for various reasons enumerated in the statute.  29 U.S.C. § 2612(a)(1).  An employee is eligible for FMLA leave if he or she has been employed

> (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
>
> (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2)(A).

Doreen Ricco had been previously terminated from her employment at the United States

Postal Service ("USPS"). She disputed that termination and was reinstated in compliance with an arbitration decision dated February 8, 1999. (Plaintiff's Ex. 1). The arbitration award modified her prior termination to a 30-day suspension and awarded her a make whole remedy including compensation and benefits (minus any outside earnings) for time she was off work beyond the 30 day suspension. (Plaintiff's Ex. 1). The USPS reinstated Ms. Ricco effective March 23, 1999. She was awarded 1,929 hours for 1998 and 536 hours for the first three and a half months of 1999. (Plaintiff's Ex. 18).

The Sixth Circuit has held that

> [t]he goal of a make-whole award is to put the employee in the same position that she would have been in had her employer not engaged in the unlawful conduct; this includes giving the employee credit towards the FMLA's hours-of-service-requirement for hours that the employee would have worked but for the unlawful termination.

Ricco v. Potter, No. 03-3294, 2004 FED App. 0242P, at 12 (6th Cir. July 27, 2004). There is no dispute that when the make-whole award is taken into account, Ms. Ricco had sufficient hours to entitle her to FMLA leave. Therefore, she is an eligible employee under the FMLA.

The USPS argues, however, that FMLA still does not apply because Ms. Ricco's absences either were not precipitated by qualifying medical conditions, or were not properly supported by medical documentation. Ms. Ricco has stated that the absences leading to her termination stemmed from her inability to work due to severe migraine headaches and depression.

Ms. Ricco testified that she recalled only one date among those for which she was terminated when she was absent for a reason that did not qualify for FMLA leave. This was when due to electrical outage her sump pump stopped working and caused her basement to

flood.  (Tr. 154-44).  When asked date by date what caused her absences, she was unable to recall which specific absences were FMLA related and which may not have been.  (Tr. 177).  According to the testimony of April Scott, Ms. Ricco's supervisor, at least some of the absences at issue were documented and would have qualified Ms. Ricco for FMLA leave.  (Tr. 85).

Ms. Ricco informed her employer each time she called in an absence that she was taking FMLA leave.  (Tr. 154).  Ms. Ricco's supervisors also knew that Ms. Ricco had requested FMLA leave for the absences at issue in this case, that she had been having panic attacks, and that she suffered from headaches.   (Tr.  21-26, 56-58).  Ms. Scott, Ms. Ricco's direct supervisor testified at the EEO proceeding relating to Ms. Ricco's FMLA claims, that Ms. Ricco would not have been terminated if she had qualified [based on her hours of service] for FMLA leave, because a great many of her absences would have been covered by the FMLA.  (Tr.  63).  Based on the testimony presented, this Court finds that the majority of Ms. Ricco's absences were covered by FMLA leave, and that she would not have been terminated if the hours she received as part of her make-whole award from the arbitrator had been taken into account.    Therefore, Ms. Ricco was improperly terminated in violation of the FMLA.

    B.  <u>Statute of Limitations</u>

The Family Medical Leave Act provides:

(1) In general

Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.

(2) Willful violation

In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event

constituting the alleged violation for which such action is brought.

29 U.S.C. § 2617(c). The USPS terminated Ms. Ricco on October 15, 1999, and this action was filed on March 14, 2002, between two and three years later. Therefore, in order for her Complaint to be timely under the FMLA statute of limitations, Ms. Ricco must show that the FMLA violation by the USPS was willful.

An employer commits a willful violation of the FMLA when it acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements. Ricco v. Potter, No. 03-3294, 2004 FED App. 0242P (6th Cir. July 27, 2004); see also, Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125-130 (1985)(defning the standard for a willful violation of the Age Discrmination in Employment Act); Williams v. Schuller Int'l, Inc., NO. 00-3614, 2002 WL 193929, at *3 (6th Cir. Feb. 5, 2002)(applying Thurston's standard of willfulness to claims brought under the FMLA). To support an allegation of willfulness, it must be shown that the employer "acted without a reasonable basis for believing that it was complying with the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 134-35 (1988).

The decision to terminate Ms. Ricco hinged on a determination that she had not worked sufficient hours to be eligible for FMLA leave. As this Court has pointed out above, there is no longer any dispute, however, that the make-whole remedy ordered by the arbitrator on Ms. Ricco's prior case gave her sufficient hours to entitle her to FMLA leave. The question, then becomes, whether the failure to count those hours at the time Ms. Ricco requested leave, rises to the level of willful violation of FMLA.

Ms. Ricco's immediate supervisor April Scott, consulted with her supervisor, Priscilla Wheeler before denying Ms. Ricco's request for FMLA leave. Ms. Wheeler, in turn, consulted

with the labor relations manager, Ezelle Graham before approving the denial of Ms. Ricco's request. (Tr. 37). Mr. Graham told Ms. Wheeler that despite the arbitrator's imposition of a make whole remedy, the only way Ms. Ricco would be entitled to FMLA leave was if she had actually worked the requisite number of hours. (Tr. 37). Mr. Graham's information came from Charles Baker, a labor relations specialist at the USPS headquarters in Washington, D.C., who provides oversight to different districts with regard to the FMLA procedures. (Tr. 91). Mr. Baker had communicated the USPS policy with regard to the computation of "hours worked" for employees who had been returned to work under a make whole remedy. (Tr. 109, 116).

The internal USPS policy in 1999 when Ms. Ricco was terminated was that hours attributed to a worker under a make whole remedy were not to be counted as "hours worked" when determining an employee's eligibility for leave under the FMLA. (Tr. 103). This policy was based on opinion letters issued by the U.S. Department of Labor which stated that the definition of "hours worked" under the FMLA was identical to the hours worked application under the Fair Labor Standards Act of 1938, 29 C.F.R. §§ 785.5-785.9. (Tr. 103, 109, Ex. L, M). Hours worked under the Fair Labor Standards Act does not include time spent on paid or unpaid leave. (Tr. 103, 109, Ex. L, M). The policy changed in 2001 to include time awarded under make whole awards in the computation of "hours worked" for purposes of FMLA eligibility. (Tr. 101). The change in policy was based on the USPS' review of relevant litigation. (Tr. 94, 101).

It seems clear that none of Ms. Ricco's supervisors were willful or reckless in their denial of her request for FMLA leave. They followed the proper chain of authority and reasonably investigated within their district whether Ms. Ricco was eligible for leave. The district level labor relations manager advised them based on long established company policies. The

question, then remains, whether the policy established by the USPS was, itself, a willful or reckless violation of the FMLA.

Ms. Ricco asserts that the USPS was reckless in maintaining its policy of disregarding time awarded under a make whole remedy when calculating eligibility for FMLA leave because there were two rulings on this issue in a case that involved the USPS, prior to Ms. Ricco's termination.  There was really only one ruling which was upheld over the objection of the USPS.  The original ruling was made by administrative judge with the Merit Service Protection Board who held that because "it [was] undisputed that but for the agency's unwarranted personnel action, the appellant would have worked 1,250 hours prior to the date he made the leave request...the agency failed to place the appellant in the position he would have been put [but] for the agency's unwarranted removal action."  Moore v. United State Postal Service, M.S.P.B. Docket No. AT-0752-95-1174-C-1 (July 23, 1998).

The USPS objected to this ruling, but the Merit Service Protection Board upheld the decision.  Moore v. United States Postal Service, 83 M.S. P.B. 533, 541-43 (Sept. 23, 1999). (Tr. 96; Ex. 14).  The decision of the Merit Service Protection Board came less than a month before Ms. Ricco's termination. There is no evidence that the USPS policy makers, or any USPS supervisors in Ms. Ricco's district were aware of this decision at the time she was terminated. Ms. Ricco was unable to cite to any federal or state court decision that took the same position prior to her termination in 1999.  Indeed, the Sixth Circuit did not address the question until the interlocutory appeal that took place in this very case. See Ricco v. Potter, 377 F.3d 599, 604-606 (6th Cir. 2004).

The policy of the USPS was a reasonable interpretation of the FMLA statute at the time it

was made.  The USPS has since changed its policy and now it counts hours that are credited to a worker under a make-whole award when determining eligibility for FMLA leave.  The current policy, therefore, comports with the holdings of the Sixth Circuit on this issue.  This Court cannot conclude that the USPS's failure to change its policy relating to how a make-whole award affects the hours worked for purposes of FMLA eligibility, within three weeks after a single contrary decision by the Merit Service Protection Board rises to the level of a willful violation of the FMLA.   Because Ms. Ricco's termination was not a willful violation of the FMLA, she is subject to a two year statute of limitations for her claims.  Ms. Ricco did not bring her claims within that two year limitations period, and her claims are therefore barred.

      C.  Public Policy Claim

Count two of the Complaint alleges that Ms. Ricco was terminated in violation of Ohio's public policy, because her termination did not comply with the FMLA.  However, when a public policy claim for wrongful termination is based on a statutory violation, the public policy claim is subject to the same statute of limitations period as is set forth in the underlying statute.  See Hady v. Hunt-Wesson, Inc., 63 F. Supp. 2d 830 (N.D. Ohio 1999).  Therefore, because Ms. Ricco was time barred on her FMLA claim, she is also time barred on the public policy claim that is based upon the FMLA violation.

## FINDINGS OF FACT/CONCLUSIONS OF LAW

The Court makes the following findings of fact and conclusions of law based upon the evidence presented at trial:

    1.  Plaintiff, Ms. Ricco was terminated for failing to maintain a regular work schedule,

based on her absences from May through July of 1999 – specifically May 7, 13, 14, 19, and 26; June 2-4, 7-11, 22-25, and 28-30; and July 1 of 1999.   (Tr. 56; Plaintiff's Ex. 6).

2. Most, if not all, of these absences were FMLA qualifying absences resulting from a serious health issue, or from depression.

3.  Taking into account the work hours credited to her under the make-whole remedy she obtained in the previous arbitration, Ms. Ricco had a sufficient number of "hours worked" to entitle her to FMLA leave for those absences.

4.  Ms. Ricco would not have been terminated if the USPS had credited her for the hours covered by the make-whole remedy she obtained in the previous arbitration award.

5.  Ms. Ricco was terminated in violation of the FMLA.

6.  The USPS had a reasonable basis at the time of Ms. Ricco's termination, to believe that it was not required to count all of the hours she was credited under the make-whole arbitration award, when calculating the "hours worked" for FMLA eligibility.

7.  The only final legal opinion contradictory to the USPS policy at the time of Ms. Ricco's termination was a finding of the Merit Services Protection Board which was issued less than one month before Ms. Ricco's termination.

8.  The USPS did not willfully violate the FMLA when it terminated Ms. Ricco.

9.  Ms. Ricco's public policy claim is subject to the same statute of limitations as is her FMLA claim.

10.  Ms. Ricco's claims are subject to the general two year statute of limitations provided in 29 U.S.C. § 2617(c).

11.  Ms. Ricco did not bring her claims within two years of her termination.

12. Ms. Ricco's claims are barred by the statute of limitations.

## **CONCLUSION**

For the foregoing reasons this Court finds in favor of the Defendant, the United States Postal Service, and against Plaintiff Ms. Ricco on both of her claims. Costs are assessed to the Plaintiff. IT IS SO ORDERED.

    s/Donald C. Nugent
Judge Donald C. Nugent

DATED: May 16, 2006